BARTHEL v. CRIPPEN.

1. SPECIFIC PERFORMANCE—CONTRACTS—EQUITY.
   In a suit for the specific performance of a contract to convey to complainant a half interest in a patent, it is *held* that the evidence supports the claim of complainant as to the making of the contract and the bad faith of a transfer of defendant's invention.

2. SAME—CONTRACTS—BREACH, EXCUSES FOR.
   Mere suspicion of intended wrongful action, unconfirmed by facts, does not excuse a breach of contract relations.

Appeal from Wayne; Donovan, J. Submitted April 14, 1910. (Docket No. 109.) Decided July 14, 1910.

Bill by Otto F. Barthel against George F. Crippen and Lewis Crippen for the specific performance of a contract. From a decree for complainant, defendants appeal. Affirmed.

*Henry C. L. Forler*, for complainant.

*Lee N. Brown (John P. Kirk*, of counsel), for defendants.

OSTRANDER, J.    At a former hearing the application
of defendants for leave to remand the case to permit the
taking of further testimony was granted.    *Barthel* v.
*Crippen*, 156 Mich. 20 (120 N. W. 15).    The additional
testimony has been introduced and the court below, upon
a consideration of the whole record, entered a decree
which, in effect, grants to complainant the relief given by
the decree first entered and prayed for in the bill.    De-
fendants have again appealed.    The issues made by the
pleadings are briefly but sufficiently stated in the former
opinion of this court.    Still more briefly, they may be re-
stated.    They are, *first*, Did defendant George F. Crip-
pen agree to assign to the complainant a one-half interest
in and to a certain invention for bean-picking machines,
the letters patent and all improvements; and *second*, If
such a contract was made, is defendant Lewis Crippen, to
whom his brother assigned said invention, etc., a few days
before the bill in the cause was filed, a purchaser with
rights superior to those of complainant?

As to the issue last stated, I am not in doubt.    The an-
swer of defendant Lewis Crippen does not meet the alle-
gations of the complainant's amended bill.    It denies, it
is true, the charge that the transfer to himself was fraud-
ulent and without consideration, and denies the conspir-
acy and confederation of the defendants, which is charged.
But it does not set out the circumstances of any transac-
tion by which this defendant became possessed, as against
complainant, of any right to or interest in the said inven-
tion and patents.    The answer of George F. Crippen to
the original bill, in which Lewis Crippen is not made a
party defendant, contains the following:

"But the said defendant, seeing the said complainant's
foul design, on the 5th of November, 1906, transferred the
said invention and all matters and patents relating or con-
nected with it, and now the only reason that the said com-
plainant is mad, is because he has lost his opportunity to
beat, cheat, and defraud defendant out of his invention."

And in his answer to the amended bill he contents him-

self with denying that such transfer was made to defraud and without consideration, and alleging that it was a good-faith transaction, based upon a good and sufficient consideration. The testimony does not convince me that the said transfer was made in good faith or for a consideration which indicates a bona fide sale of property, especially in view of defendant's representations concerning the real value of the invention. The contract with complainant being established, I should find in the transfer to Lewis Crippen no obstacle to granting relief.

In considering whether the testimony supports the fact of a contract such as is charged to have been made, the additional testimony which was taken does not materially add to the case made for defendant in the record first presented. But it makes more clear the fact that complainant, after defendant had repudiated all relations with him, after a machine had been constructed embodying improvements to the original invention, represented his brother in the patent office in an application to secure a patent covering those improvements, with respect to which improvements defendant George F. Crippen was also seeking to secure a patent. By the terms of the alleged contract, complainant and defendant were to be owners each of a one-half interest in the original invention and in all improvements, and they were jointly engaged to perfect the invention, construct and market the improved machine. Complainant's brother was the designer and draughtsman employed, as complainant contends, in the common enterprise. The improvements for which the brother sought a patent were made in the performance of the contract. It is undoubtedly true, as complainant contends, that the testimony in the interference proceedings in the patent office relates to the question of priority and originality of invention of these alleged improvements.

But it is also true that the position assumed by complainant in the interference proceedings is not wholly explained by the suggestion that whether his brother or Crippen was held to be the inventor, the improvements

must nevertheless, under the contract, inure to the benefit of both complainant and Crippen.   It is said in the brief for complainant that—

   " If Crippen had not repudiated the contract, if Crippen had not taken the drawings and gone to another patent attorney for the purpose of patenting these improvements, Oliver Barthel would have had no reason to file an application in order to determine the question of inventorship.   It was because Mr. Crippen had repudiated the contract and had sought to reap the benefit of the labors of Oliver E. Barthel and of the time and money expended by Otto Barthel, the complainant, that this application was filed.   It might be said that it was unnecessary for Oliver E. Barthel to file an application covering the improvements, because, under the contract, whatever patent might be procured by Crippen upon these improvements would belong to the partnership.   But at that time, Barthel had no way of knowing that this contract would be enforced.   There was nothing in writing, and he felt pretty well assured that Crippen, after acting as he did, would deny the existence of the contract."

   If complainant had not, immediately after defendant had taken away the drawings, filed his bill of complaint in this cause, the proceedings instituted by him in behalf of his brother in the patent office would have a more sinister aspect.   As it was, he set up his claim in his bill, a pleading which was at once available to defendants as evidence in the interference proceedings.   The interference proceedings were as well available to defendants in this cause.   The complainant and defendant George F. Crippen were acting in accordance with some arrangement.   I do not believe the arrangement was the one stated by defendant.   I think it incredible that at the point to which Crippen had proceeded with his idea of a bean-picking machine the parties entered into a contract which involved the building of 10 machines at an estimated cost of $250 each.   Defendant immediately proposed an improvement to his invention.   Clearly the matter was in an experimental state, with the new idea to be accommodated to the original invention, drawings to be made, pat-

terns made, an experimental machine constructed to demonstrate the value of the machine.   It is more probable, since it is agreed there was some arrangement, that it was the one testified to by complainant.   His testimony is better corroborated than is that of defendant.   I am satisfied, too, that defendant George F. Crippen did not propose to abide by whatever bargain he had made with complainant, and did propose to secure for himself the valuable improvements to his invention, the benefit of the money and time expended by complainant and his brother, and deprive complainant of all benefit and all remedy. There is no excuse made out for his conduct.   He asserts the belief that complainant meant to steal his ideas or to render his invention valueless.   Mere suspicion can always be asserted as a ground for the breach of contract relations.   It must be confirmed by facts before the requirements of the law are met.   In this case, defendant's apprehensions appear to have heen unwarranted.

The form of the decree is not criticised.   It gives to complainant the relief prayed for and is affirmed, with costs.

HOOKER, MOORE, MCALVAY, and STONE, JJ., concurred.