CO-OPERATIVE RAW FUR CO. v. AMERICAN CREDIT INDEMNITY CO.

(Circuit Court of Appeals, Sixth Circuit. March 9, 1917.)

No. 2894.

1. APPEAL AND ERROR ☞1053(5), 1059—HARMLESS ERROR—FAILURE TO STRIKE EVIDENCE—IMMATERIAL EVIDENCE.

In an action on a credit indemnity bond, where plaintiff alleged that defendant's agent had delivered a rider to be pasted on the bond which would cover the particular loss for which the suit was brought, but which had been lost, the admission of defendant's evidence that its agent had no authority to bind the company by such a contract, and the exclusion of plaintiff's evidence as to the agent's authority, was not prejudicial, where, though the court did not withdraw the evidence from the jury's consideration, he assumed in his charge that the agent had authority to make the contract, and expressly submitted to the jury only the question whether the claimed rider was delivered by the agent to plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4180, 4208.]

2. TRIAL ☞255(5)—REQUEST FOR CHARGE—WITHDRAWING EVIDENCE.
Where the parties were represented at the trial by counsel, it is not error for the court to omit to withdraw immaterial evidence from the jury, where no request was made that it be withdrawn.
[Ed. Note.—For other cases, see Trial, Cent. Dig. § 633.]

3. APPEAL AND ERROR ☞263(3), 719(7)—PRESERVATION OF GROUNDS OF REVIEW—CHARGE—FAILURE TO WITHDRAW EVIDENCE—EXCEPTION.
The omission in the charge to withdraw immaterial testimony from the consideration of the jury will not be considered on writ of error, where the charge was not excepted to for that reason, and no error was assigned.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1518, 1525, 2975, 3490.]

4. APPEAL AND ERROR ☞1033(3)—HARMLESS ERROR—ADMISSION OF EVIDENCE—EVIDENCE FAVORABLE TO PLAINTIFF IN ERROR.
Where plaintiff's amended declaration, filed after the first trial had commenced, alleged that defendant's agent had delivered to plaintiffs a rider, to be pasted on the credit indemnity bond, which would cover the loss sued for, the admission at the trial on the amended declaration of that part of the opening statement of plaintiffs' counsel at the former trial, in which he stated that such a rider had been delivered, was favorable, and not prejudicial, to plaintiff.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4054, 4055.]

5. WITNESSES ☞406—IMPEACHMENT—INCONSISTENT STATEMENTS—ORIGINAL PLEADING.
At the trial on an amended declaration, which alleged that defendant's agent had delivered to plaintiffs a rider, for their credit indemnity bond, which would cover the loss sued for, but which had been lost, and plaintiffs' officer had testified that he had told counsel about the lost rider before the original declaration was filed, the original declaration was admissible to contradict that witness, and to show that the lost rider was an afterthought, born of necessity.
[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1276–1279.]

In Error to the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Action by the Co-operative Raw Fur Company against the American Credit Indemnity Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Adolph Sloman, of Detroit, Mich., for plaintiff in error.
Henry C. Walters, of Detroit, Mich., for defendant in error.

Before WARRINGTON and KNAPPEN, Circuit Judges, and HOLLISTER, District Judge.

HOLLISTER, District Judge. Plaintiff below (plaintiff in error) was a dealer in raw furs at Detroit. American Credit Indemnity Company insured against bad debts. Plaintiff declared on two indemnity policies (called "bonds") issued by the defendant to it. The declaration showed that on December 24, 1910, it sold and shipped certain furs to one Annis, who afterwards became bankrupt. In the event of a recovery the amount was agreed upon.

The term of the first bond was February 1, 1911, to January 31, 1912, and the insurance was against actual loss sustained through the

insolvency of debtors occurring during the term of the bond on sales of merchandise shipped and delivered during the term of the bond, and it was provided that the bond did not cover any loss occurring prior to the payment of the premium, nor any loss occurring after its expiration. It was, however, agreed by rider pasted on the bond that losses occurring during the term of the bond on goods sold, shipped, and delivered between December 15, 1910, and January 31, 1911, should be covered by the bond, if otherwise coming within its provisions.

The Annis shipment was within the period covered by the rider, but the bond provided that notice of insolvency of a debtor must be given the defendant during the term of the bond and within 20 days after the insured received information, and if the information was received too late for notice before the expiration of the term, the notice might be given within 20 days after its expiration. Annis filed a petition in bankruptcy February 21, 1912, of which notice was given February 27, 1912. The term of the bond ended January 31, 1912. Clearly there was no liability under this bond.

The bond carried a clause entitled, "Advantages of Subsequent Bond," reading:

"In case this Company issues to the Indemnified a new bond, and the premium therefor is paid prior to the expiration of this Bond, losses occurring during the term of the new Bond on sales of merchandise shipped and delivered within the twelve months next prior to the expiration of this Bond shall be covered and may be proven under the new Bond. * * *"

The second bond was for the term February 1, 1912, to January 31, 1913. It insured against loss occurring during the term of the bond on sales of merchandise shipped and delivered during its term, but carried a rider agreeing that covered losses occurring during the term, but after the payment of the premium, upon sales, shipments and deliveries made from February 1, 1911, to February 1, 1912, might be proved under the bond. This rider embodied the advantages quoted above. In other respects, however, the terms and provisions of the bond were to remain in full force and effect. These and the rider could not include the Annis shipment. The new bond was not in any way a renewal or continuation of the first bond, but was a new and separate contract, having no reference to the first, and there is no ambiguity in either, or in both read together.

When the case came on for trial, counsel for plaintiff in his statement to the jury referred to an agreement between one Mullen, the agent of the defendant at Detroit, and one Slesinger, of the plaintiff company, that the latter would be furnished with a rider to the second bond covering, as did the rider on the first bond, the shipment to Annis of December 24, 1910. Counsel stated, also, that within a few days after the agreement Mullen appeared with a slip of paper—the rider referred to—which was to be attached to the policy, "but was put away in the safe and was lost, at least we have not been able to find it." Thereupon the court held, and rightly, that on the declaration no cause of action appeared. The plaintiff was permitted to amend, and the case was continued for further proceedings.

The amended declaration alleged that a rider, to be attached to the second bond, was furnished by Mullen to plaintiff in terms covering losses on goods shipped and delivered from December 15, 1910, to February 1, 1911, "Which rider has become mislaid, or misplaced, but plaintiff expects to produce the same on the trial of said cause, or if unable to, to make proof of its contents." The effect of defendant's pleas and notice was a denial of liability on the bonds, which included a denial of the claim that another rider had been delivered, to be attached to and to become a part of the second bond. The case came on for trial on the issues tendered by the amended declaration and defendant's denials. The rider was not produced, but there was testimony (flatly contradicted) tending to show its contents and delivery.

The court permitted defendant to offer in evidence, over objection, a contract between defendant and its agent limiting his authority, and showing want of it to bind his company by contracts not authorized. Plaintiff's offer of evidence (assumed here to be competent and of probative force), tending to show authority in the agent to contract for his company as alleged, was denied, over plaintiff's objection. The court, over objection, permitted the defendant to introduce the original declaration as an admission against the claim, made by plaintiff's counsel in his opening statement at the abortive trial and alleged in the amended declaration, that the rider in question was furnished to be attached to the second bond. Counsel for defendant was permitted, over objection, to offer the entire statement (covering 15 pages of the printed record) of plaintiff's counsel when the case first came on to be heard, including colloquies between court and counsel and the statement of all the plaintiff expected to prove, including much—indeed, most of it—immaterial to the one issue submitted by the court to the jury: Whether or not the rider had been furnished. The reason this statement was permitted to be read by counsel for defendant was that counsel for plaintiff, in the examination of his witness Victor Slesinger, said:

"When this case came on for trial in this court before a jury at a former term, our counsel in his opening statement before that jury mentioned the fact of that rider being missing."

When the judge came to charge the jury, he told them the bonds were not complicated or difficult to understand; that their terms required careful reading, "but they are such as may be understood by persons connected or conversant with the business in connection with which the policies are used or sold"; and that, if plaintiff was entitled to recover at all, it was because of the alleged rider. He assumed that Mullen had authority, and he unequivocally and with emphasis directed the jury to consider the one question, which he charged them was the only question in the case: Whether the rider had been furnished or not. To avoid any possible misunderstanding, he said:

"Now, in order to make certain that you do dispose of this case on just that very issue, I have prepared and will hand you and you will take to your jury room this written question, which, as I say, is the only question in this case: Was a rider of the character claimed by the plaintiff delivered by Mr. Mullen to be attached to the second policy * * * ? If you find that the rider was

delivered, you answer the question 'yes' and then you will return a verdict in favor of the plaintiff. * * * If you find that the rider was not delivered, then you answer 'no' and return a verdict in favor of the defendant, no cause of action."

Upon answer in the negative, judgment was rendered for defendant, to which plaintiff prosecutes this proceeding in error.

[1] Clearly enough, on the assumption by the court of the agent's authority, all of the testimony one way or the other on that subject became irrelevant and immaterial. The defendant gained nothing by the introduction of the contract between it and its agent; the plaintiff lost nothing by the exclusion of the testimony tending to show the agent's authority. We think it the better practice that such irrelevant testimony should be withdrawn from the jury's consideration, lest there should, by any possibility, be some misunderstanding on their part as to the issues to be decided by them; and for this reason we think the court might properly, in the charge or during the progress of the case, have told the jury to disregard all that testimony. But, in view of the unequivocal, unmistakable, and reiterated way the court put to the jury the sole issue in the case, we think the plaintiff could not have been prejudiced because these matters were not withdrawn from their consideration.

[2] But, in any event, we think no error intervened because the court did not rule such matters out on his own motion. It may be that if the plaintiff were trying its own case, without counsel, the court might feel disposed to protect the plaintiff against its want of knowledge of proper practice in the trial of cases by advising the jury relative to many things which ordinarily the court would not refer to in a charge when both sides were represented by counsel learned in the law. In this case, however, it was the affirmative duty of counsel, in case the withdrawal of the evidence was thought desirable, to call the court's attention to the fact that under the sole issue presented all testimony irrelevant thereto, through which the rights of his client might be prejudiced if it remained in the case, should be withdrawn, and, in case of an adverse ruling, to note an exception.[1]

[3] The charge not having been excepted to because of the omission to withdraw that testimony from the jury's consideration, and no error being assigned therefor, the omission in the charge will not be considered here.[2]

[4] And so it is with the statement complained of. We see no reason for its admission in evidence, even that part of it referring to the rider; but, as that made good plaintiff's claim of originally relying to some extent upon the rider, although it was not included in the original declaration, that part of it could have done the plaintiff no harm. Nor could those parts be to its injury which were purely a statement of its claim. Those were only a repetition of that which plaintiff's counsel

[1] Alexander v. United States, 138 U. S. 353, 355, 11 Sup. Ct. 350, 34 L. Ed. 954, and cases cited.

[2] Isaacs v. United States, 159 U. S. 487, 491, 16 Sup. Ct. 51, 40 L. Ed. 229; Hardesty v. United States, 168 Fed. 25, 26, 93 C. C. A. 417 (C. C. A. 6).

must have said to the jury in his opening statement on the final trial; but the colloquies between court and counsel and the matters having to do with Mullen's authority, became irrelevant under the court's charge. When, by the court's charge, the issues were narrowed to the one question of fact, it was then the duty of plaintiff's counsel to call the court's attention to such parts of the statement as presented irrelevant issues.

[5] For several reasons the original declaration was properly admitted in evidence. Slesinger testified that he had told his counsel about the lost rider before the declaration was filed. Yet the declaration was silent as to that all-important fact. It is true his counsel dwelt upon it in his original statement, but it is difficult to explain why counsel left it out of a declaration otherwise carefully drawn. The inference is that Slesinger did not tell his counsel about the rider until after the declaration was filed. The declaration tended to contradict Slesinger on a highly important subject, and to show that the lost rider was an afterthought born of necessity. It was admissible for both of these reasons, and was also in the nature of an implied admission. The authorities directly to the point are not as numerous as one might suppose, and on the general subject are somewhat contradictory. However, the admission in evidence of pleadings withdrawn and superseded by amended pleadings, for the purposes indicated, is justified, we think, upon sufficient grounds. Of course, matters contradictory, or showing motive, or by way of admission, are open to explanation, and should, with the explanation, be submitted to the jury. The question goes rather to the weight of evidence than to its admissibility. The decisions in the note [3] bear more or less directly on the subject.

This discussion covers all of the assignments of error, except a number even less consequential. On the whole case, we are satisfied no reversible, if any, error intervened, and the judgment below will be affirmed, at the costs of plaintiff in error.

[3] Walser v. Wear, 141 Mo. 443, 463, 464, 42 S. W. 928; Ryan v. Dutton (Tex. Civ. App.) 38 S. W. 546; Starkweather v. Kittle, 17 Wend. (N. Y.) *20, *22; Estate of O'Connor, 118 Cal. 69, 50 Pac. 4; Galloway v. Railway Co. (Tex. Civ. App.) 78 S. W. 32; Stone v. Cook, 79 Ill. 424, 429; Meade v. Black, 22 Wis. *241; Younglove v. Knox, 44 Fla. 743, 749, 750, 33 South. 427; Barthel v. Crippen, 156 Mich. 20, 120 N. W. 15.